UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
RYAN MCCORMACK,                                        :
                                                       :
                                    Plaintiff,         :
                                                       :                    22-CV-7273 (VSB)
                  - against -                          :
                                                       :                    **OPINION & ORDER**
                                                       :
DINGDONG (CAYMAN) LTD., et al.,                        :
                                                       :
                                    Defendants.        :
                                                       :
-------------------------------------------------------X

Appearances:

Thomas Livezey Laughlin, IV
Scott + Scott, L.L.P.
New York, NY
*Counsel for Plaintiff*

Matthew Osborn Solum
Kirkland & Ellis LLP
New York, NY
*Counsel for Defendant Dingdong (Cayman) Ltd.*

Joanna Andrea Diakos
Priya Chadha
K&L Gates LLP
New York, NY
*Counsel for Defendants Colleen A. De Vries and Cogency Global Inc.*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Ryan McCormack ("Plaintiff" or "McCormack") brings this securities fraud

action against Dingdong (Cayman) Ltd.  ("Dingdong") and several of its officers and

underwriters, alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933,

codified at 15 U.S.C. §§ 77k, 77-l(a)(2), and 77o respectively.  Following my Opinion & Order

filed on November 30, 2023, (the "Opinion"), denying Plaintiff's motion for appointment as lead

1

plaintiff and lead counsel, Plaintiff filed a letter motion requesting that I reopen the lead plaintiff and lead counsel appointment process.  For the following reasons, Plaintiff's motion is DENIED.

## I.   <u>Procedural History</u>[1]

On December 19, 2022, Plaintiff filed a letter requesting that I reopen the lead plaintiff and lead counsel process.  (Doc. 25.)  The parties submitted a joint letter on December 20, 2022, requesting that I grant a continuance of the deadline for parties to file a proposed briefing schedule for an amended complaint and subsequent response.  (Doc. 26.)  I ordered that "[t]he deadline to propose a schedule for the filing of an amended complaint is adjourned sine die pending my decision on reopening the lead plaintiff and lead counsel appointment process." (Doc. 27.)  On January 4, 2023, I issued an order directing Defendants to respond to Plaintiff's letter motion by January 18, 2023.  (Doc. 28.)  On January 18, 2023, Defendants filed their opposition to Plaintiff's letter motion to reopen the lead plaintiff and lead counsel appointment process.  (Doc. 30.)  Plaintiff filed their reply to the opposition on January 25, 2023.  (Doc. 31.)

## II.   <u>Discussion</u>

### A.  *Applicable Law*

Before the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b), "courts traditionally appointed lead plaintiff and lead counsel in class action lawsuits on a first come first serve basis."  *Garbowski v. Tokai Pharms., Inc*., 302 F. Supp. 3d 441, 444 (D. Mass. 2018) (*citing* S. Rep. No. 104-98 (1995)) (the "Senate Report") (cleaned up).  This encouraged a "race to the courthouse" among parties seeking lead-plaintiff

---

[1] The facts set forth herein are taken from allegations in the Complaint, (Doc. 1 ("Compl.")), McCormack's motion seeking appointment as lead plaintiff and approval of his selection of lead counsel, (Doc. 20), McCormack's memorandum of law in support, (Doc. 21 ("Pl.'s Mem.")), and McCormack's affidavit and exhibits in support, (Doc. 22 ("Laughlin Decl.")).  I assume familiarity with this case's background as detailed in my Opinion, and accordingly only include history relevant to the pending motion.  (Doc. 24.)  However, my reference to these allegations should be not construed as a finding as to their veracity, and I make no such findings.

status, *see* Senate Report at 10, and spawned a cottage-industry of specialized litigation firms that "researched potential targets for these suits, enlisted plaintiffs, controlled the litigation, and often negotiated settlements that resulted in huge profits for the law firms with only marginal recovery for the shareholders." *Garbowski*, 302 F. Supp 444, *quoting In re Cendant Corp. Litig.,* 182 F.R.D. 144, 145 (D.N.J. 1998). The result was lawsuits driven by law firms instead of injured investors, and in "many instances litigated with a view towards ensuring payment for their services without sufficient regard to whether their clients were receiving adequate compensation in light of evidence of wrongdoing." *Id.*

The PSLRA, was enacted "to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 309 (2007). Congress sought to combat perceived abuses in securities litigation by legislating "heightened pleading requirements, limits on damages and attorney's fees, a 'safe harbor' for certain kinds of statements, restrictions on the selection of lead plaintiffs in securities class actions, sanctions for frivolous litigation, and stays of discovery pending motions to dismiss." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 277 (2014). One such restriction is Section 101(b) of the PSLRA. This section governs the appointment of lead plaintiffs in securities class actions and sets up new procedures for the appointment of lead plaintiffs and lead counsel aimed at increasing the likelihood that "institutional investors— parties more likely to balance the interests of the class with the long-term interests of the company—would serve as lead plaintiffs." *Tellabs, Inc.*, 551 U.S. at 321; *see also In re Cendant Corp. Litig*., 264 F.3d 201, 266 (3d Cir. 2001) ("The goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class.").

The PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that" satisfies any of the three conditions enumerated in 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa-cc). However, the presumption may be rebutted if the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class." *Id*. at (iii)(II)(aa).

The PSLRA "does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation." *In re Allergan PLC Sec. Litig*., No. 18CIV12089CMGWG, 2020 WL 8620082, at *1 (S.D.N.Y. Dec. 7, 2020) (quoting *In re Portal Software Sec. Litig*., No. C-03-5138 VRW, 2005 U.S. Dist. LEXIS 41178 at *9 (N.D. Cal. Mar. 9, 2005). This is evident from the statute itself, which does not include guidance on repeating the lead-plaintiff process and suggests that "Congress contemplated invoking the PSLRA's lead plaintiff process only once – at the very beginning of the suit." *In re Portal Software, Inc*, 2005 U.S. Dist. LEXIS 41178 at *10. In analyzing whether a lead plaintiff selection process is in conformity with the PSLRA, courts should consider "the substantive policies of the governing statute" which are to ensure that securities class actions are managed by "active, able class representatives who are informed and can demonstrate that they are directing the litigation." *Berger v. Compaq Computer Corp*., 257 F.3d 475, 483 (5th Cir. 2001).

### B.  *Application*

This case presents unique circumstances for which the PSLRA does not provide specific guidance. I have determined that McCormack is not suitable to be appointed as lead plaintiff of the putative class, and there are no other applications or movants to be lead plaintiff. (Doc. 24.) The law firm Scott+Scott published a notice in *Business Wire* on August 25, 2022, with a lead plaintiff deadline of October 24, 2022. *Id*. Several other law firms also posted press releases and

4

notices in various reputable and widely-circulated publications and wire services, and no other lead plaintiff candidates emerged.[2]  Despite multiple law firms seeking lead plaintiffs, only one putative lead plaintiff, McCormack, filed a motion seeking appointment as lead plaintiff.  (Doc. 22.)  On October 24, 2022, the deadline to file a motion for appointment as lead plaintiff and approval of selection of counsel passed.  (Doc. 15.)  On October 26, 2022, McCormack filed a motion seeking to be appointed lead plaintiff and approval of his selection of lead counsel, Scott+Scott.  McCormack was the only plaintiff that filed a motion seeking appointment as lead plaintiff.  He claimed that he bought and held 40 shares of Dingdong stock during the class period, leading to a total of $504.40 in losses.

To date, there has been significant effort expended to identify a lead plaintiff with an alleged adequate amount of loss, who is willing to vigorously pursue the action on behalf of a class.  No one, other than McCormack, came forward.  Reopening the lead plaintiff and lead counsel appointment process at the request of the law firm Scott+Scott is contrary to the principal goal of the PSLRA: that securities actions should be driven by investors, and not class action counsel.  *Bosch v. Credit Suisse Grp. AG*, No. 22-CV-2477 (ENV), 2022 WL 4285377, at *5 (E.D.N.Y. Sept. 12, 2022); *see also* H.R. Rep. No. 104-369, at 32–33 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731–32).  One of the main aims of the PSLRA is to avoid lawyer-driven litigation, and the lead plaintiff selection process is designed to incentivize investors with large financial incentives to participate in litigation, and to "empower investors so that they – not their lawyers – exercise primary control over private securities litigation."  S. Rep. No. 104-98 at 10. ("The Committee believes that the lead plaintiff—not lawyers—should drive the litigation."); *see*

---

[2] At least four other law firms, including Khan Swick & Foti, LLC, the Goss Law Firm, Lieff Cabreser Heimann & Bernstein, LLC, and Levi & Korsinsky, LLP, issued press releases seeking lead plaintiffs in this matter without success.

*also Tellabs, Inc.*, 551 U.S. at 322.

Plaintiff also argues that in light of my reasoning that Scott+Scott's initial notice was deficient that I should reopen the lead plaintiff and lead counsel appointment process and allow for a new notice to be republished.  However, as noted above, during the initial search for a lead plaintiff, several other law firms also filed notices and news alerts on various reputable and far-reaching media outlets such as *Business Wire* that advised members of the purported class of the pendency of the action, claims asserted, and the purported class period.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); *see also, In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (noting that publication of the required notice in *Business Wire* served as sufficient notice for the purposes of the PSLRA).  For example, Khan Swick & Foti posted numerous notices, including one on PR Newswire, that contained the applicable time frame, and information regarding the court, case name, and case number.[3]  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  PR Newswire has been accepted as a satisfactory publication to publish notices under the PSLRA.  *See, e.g., In re Party City Sec. Litig.*, 189 F.R.D. 91, 105 (D.N.J. 1999) (finding that publication over PR Newswire satisfies the PSLRA);  *Skwortz v. Crayfish Co*., No. 00 CIV. 6766 (DAB), 2001 WL 1160745, at *4 (S.D.N.Y. Sept. 28, 2001) (same).

Here, unlike the cases that permitted republication of a notice for lead plaintiff, *see, e.g.*, *Kaplan v. S.A.C. Cap. Advisors, L.P.,* 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (ordering plaintiffs to republish notice because consolidation of claims led to newly-asserted claims and alteration of the class period, making it "likely that individuals who could now be considered

---

[3] *See, e.g. DINGDONG SHAREHOLDER ALERT BY FORMER LOUISIANA ATTORNEY GENERAL: KAHN SWICK & FOTI, LLC REMINDS INVESTORS WITH LOSSES IN EXCESS OF $100,000 of Lead Plaintiff Deadline in Class Action Lawsuit Against Dingdong (Cayman) Limited - DDL*, (Oct. 14, 2022), available at https://www.prnewswire.com/news-releases/dingdong-shareholder-alert-by-former-louisiana-attorney-general-kahn-swick--foti-llc-reminds-investors-with-losses-in-excess-of-100-000-of-lead-plaintiff-deadline-in-class-action-lawsuit-against-dingdong-cayman-limited---ddl-301650015.html.

potential lead plaintiffs would have disregarded the earlier notice"), there have been no amendments to the complaint that have substantially altered the claims or class members. Further, there were notices by various law firms that were widely broadcast with the required information that informed individuals who could have been potential lead plaintiffs of their opportunity to move for lead plaintiff appointment in this case.  Only one potential lead plaintiff, McCormack, emerged after the statutorily required 60-day period.  In the absence of any guidance in the PSLRA or the Second Circuit, I find that since the scope and claims in the complaint have not changed, and there was ample notice given to potential lead plaintiffs that re-opening the lead plaintiff selection process is unwarranted.

Finally, Plaintiff argues that I should reopen the lead plaintiff selection process because class members may be inhibited from pursuing claims as early as March 2023 due to Section 13 of the Securities Act of 1933, which states that Section 11 claims must be brought within one year after discovery of the alleged misstatement or omission.  (Doc. 31.) ("The class may be potentially barred from pursuing claims as early as March 2023.")  As an initial matter, McCormack may still pursue his claims on an individual basis and vindicate any losses he attributes to Dingdong's fraudulent or illegal behavior.  (*See* Doc. 24 at 13.)  However, as I have explained above, the lead plaintiff selection process has been procedurally satisfied, and I have an obligation "to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs, Inc*., 551 U.S. at 322.  At this point in the litigation, multiple firms published notice and the statutory 60-day time period has elapsed from publication of the notice to seek a lead plaintiff candidate and move for their appointment as lead plaintiff in this action.  Reopening the lead plaintiff selection process at this point would be against the spirit of the PSLRA and further delay resolution of this matter.  In addition, Plaintiff

7

has not demonstrated good cause to reopen the process, such as amendment of the complaint or claims, or made a showing that the previous lead-plaintiff appointment process was fatally flawed.

**III.** <u>**Conclusion**</u>

For the reasons set forth above, McCormack's motion to reopen the lead plaintiff and lead counsel appointment process is DENIED.

Within 21 days, parties shall submit a proposed schedule for the filing of any amended complaint and subsequent responses. (Doc. 15.) The Clerk of Court is respectfully directed to terminate all open gavels.

SO ORDERED.

Dated: June 1, 2023
New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge